**BLANK ROME LLP**
*A Pennsylvania LLP*
STEPHEN M. ORLOFSKY
ADRIENNE C. ROGOVE
New Jersey Resident Partners
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Telephone: (609) 750-2646
Facsimile: (609) 897-7286
Orlofsky@BlankRome.com
Rogove@BlankRome.com

**BLANK ROME LLP**
*A Pennsylvania LLP*
Mara B. Levin (*pro hac vice* forthcoming)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 885-5000
Facsimile: (212) 885-5001
mlevin@blankrome.com

*Counsel for Plaintiff Westland Garden State
Plaza Limited Partnership*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WESTLAND GARDEN STATE PLAZA LIMITED PARTNERSHIP,<br><br>*Plaintiff*,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>*Defendant*. | Civil Action No.:<br><br>***Electronically Filed***<br><br>**VERIFIED COMPLAINT** |

Plaintiff Westland Garden State Plaza Limited Partnership ("Plaintiff" or "Westfield Garden State"), by its undersigned counsel, files this Verified Complaint against Defendant Microsoft Corporation ("Defendant" or "Microsoft") seeking specific performance and/or injunctive relief, and in support thereof states as follows:

## PRELIMINARY STATEMENT

1. This is an action for breach of contract seeking to have Microsoft comply with the terms of its October 14, 2013 lease with Plaintiff (the "Lease"), requiring Microsoft to open and operate its retail store (the "Premises") at the Westfield Garden State Plaza ("Garden State Plaza"), for one year now that Microsoft exercised on July 8, 2020 its contractual right of early termination under Lease § 1.05 (the "Early Termination Provision").

2. The Early Termination Provision requires Microsoft to "remain open in the Premises and … perform all of its obligations under this Lease" for one year from the date of the notice. The language of the Lease is unambiguous, as is the fact of Microsoft's breach in refusing to reopen its Premises; instead announcing on June 26, 2020 its new business plan to close its 83 retail stores, other than those stores in China, its New York City flagship store, and stores in England, Australia and on its corporate campus in Washington.

3. Microsoft has not attributed its recently announced strategic change in retail operations to the precarious state of retail shopping centers in general pre-COVID nor to the COVID-19 pandemic. Microsoft has not asserted any breach of the Lease by Plaintiff, or that Microsoft cannot remain viable if it continues to honor its promises in its leases for stores in Westfield's shopping centers.

4. Microsoft's refusal to remain open and operating a key attraction at Garden State Plaza for one year, as required by the Early Termination Provision, will cause a domino effect of adverse consequences for Westfield Garden State. The vacancy of Microsoft, a prestigious tenant in a prominent location, amidst an unprecedented number of smaller independent store closures due to COVID-19 and bankruptcy filings by larger, more familiar stores, would be a perfect storm. If Microsoft's centrally-located space suddenly becomes vacant, the damages to Westfield Garden State's reputation and its relationship with customers, retailers, and business partners, such as

2

diminished rents, non-renewal of leases by other tenants, and lost opportunities with prospective tenants are not quantifiable.

## PARTIES

5.    Plaintiff Westfield Garden State, having an address at 2049 Century Park East, 41st Fl., Los Angeles, California, is a Delaware limited liability company.  Its sole member is Westfield America Limited Partnership, a Delaware limited partnership. Westfield Garden State owns and operates the Garden State Plaza, located at One Garden State Plaza, Paramus New Jersey.

6.    Defendant Microsoft Corporation is a publicly-traded, for-profit entity incorporated in the state of Washington, having an address at One Microsoft Way, Redmond, Washington.

## JURISDICTION AND VENUE

7.    This court has subject matter jurisdiction over the instant matter pursuant to 28 U.S.C. §1332(a)(1), because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

8.    Venue is proper in the District of New Jersey pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and the property that is the subject of this action is situated in this judicial district.

## FACTUAL ALLEGATIONS

### A.    Westfield's Shopping Centers and Microsoft's Relationship with Westfield

9.    Plaintiff Westfield Garden State is part of Unibail-Rodamco-Westfield ("Westfield"), a premier global developer and operator of flagship destinations, including retail shopping malls, retail airport centers, office space, as well as convention and exhibition venues, including 55 flagship locations in Europe and the United States.

10.    In the United States, Westfield operates thirty-two (32) shopping centers in California, Washington, Illinois, New York, New Jersey, Maryland, Connecticut, and Florida.

11.     Westfield's shopping centers are developed as lifestyle destinations in the neighborhoods in which they are located.  Westfield aims to continually improve its portfolio through its asset rotation strategy, disciplined asset management, and the build-out of its development pipeline.  Westfield's shopping destinations attract the best retailers for its customers, featuring top players in fashion, luxury, dining, lifestyle, health & well-being, technology, entertainment and leisure.  Westfield has approximately 5,000 tenants occupying space in its malls across the United States, including 2,200 unique tenant relationships.

12.     Westfield's shopping centers also participate in the company's Better Places 2030 Initiative, the goal of which is to reduce carbon emissions by 50% by the year 2030 globally by improving tenant and visitor transportation, constructing more energy-efficient buildings, and reducing energy consumption.

13.     Westfield's overall objective in the leasing of its tenant spaces is to achieve a particular, curated mix of retailers in terms of size, positioning and location, demographics, design, merchandising, price points, product and services, and chains and specialty merchants, so as to allow for an efficient flow of customers to maximize commercial transactions. Implementation of the leasing strategy creates a co-dependent system of tenants, positioned in a manner designed to increase their revenue stream and to maximize traffic flow, commonalities, and cross-promotion.

14.     This curated tenant mix and placement of tenant spaces is at its optimum in Westfield's flagship malls, which include the six flagship malls where Microsoft leases space: Garden State Plaza, Westfield Montgomery Mall in Bethesda, Maryland, Westfield Century City in Los Angeles, California, Westfield San Francisco Centre in San Francisco, California, Westfield Topanga in Canoga Park (Los Angeles County), California, and Westfield Valley Fair in Santa Clara, California.

15.     Microsoft is considered one of Westfield's premier tenants. What separates these

premier tenants from other tenants is their ability to drive sales, attract other tenants to the mall, improve the merchandising of the shopping center, and contribute to the overall reputation of the particular  mall and Westfield's overall portfolio. When Westfield leases to marquee retailers such as Microsoft, the shopping center enjoys a distinct advantage over other shopping centers in the vicinity by drawing other desirable retailers.  Leasing to a retailer like Microsoft expands the center's appeal to more diverse and affluent shoppers and, in turn, increases the prestige of these flagship malls.

**B.      Microsoft's Lease and Its Location in Garden State Plaza**

16.     Garden State Plaza, located only 15 miles from Manhattan, is recognized as the retail destination of choice for Bergen County and northern New Jersey, and is regularly frequented by New Yorkers as well.  The mall contains more than two million square feet of retail space, consisting of approximately 300 retailers and restaurants and is home to an impressive range of top luxury retail brands and its prime tenants responsible for customer draw include Gucci, Apple, Lululemon, Tesla, Zara and Microsoft, with Neiman Marcus, Macy's and Nordstrom as the center's anchor tenants.

17.     The Premises leased by Microsoft consists of 4,208 square feet, with over 177 lineal feet of frontage to Garden State Plaza's interior.  Microsoft selected the premier locations in each of Westfield's six leading malls, including Garden State Plaza. (A true and correct copy of the relevant provisions of the Lease is attached hereto as Exhibit A.)[1]

18.     Microsoft has operated in the Premises for seven years and the Lease has a ten-year term expiring on January 31, 2025.  (*See id.* at § 1.02.)

19.     The  Microsoft  Premises  are  located  at  the  intersection  of  four  corridors  and

---

[1] Due to confidentiality obligations, only the Lease provisions relevant to this matter have been attached.  If Plaintiff were to file the Lease in its entirety, it would do so under the seal.

overlooks the mall's food court and dining terrace; due to its unique open-walled configuration, it has significant and unavoidable visibility to shoppers traversing any one of the four corridors and those entering or exiting the mall through either Macy's or the AMC Theaters.  Microsoft's location is perfectly situated at the crossroads of one of the busiest sections of the center.  The Microsoft store is strategically located on the corner adjacent to Macy's, the highest sales volume generator in the center, and in close proximity to AMC, which is one of the highest grossing AMC's in the country, and to the busiest entrance into the mall.  Microsoft attracts other first-rate tenants that seek to be in close proximity to its store, including Starbucks, Urban Outfitters North Face, Lego and Disney. (*See* Ex. A, A-2 & A3.)

20.     Microsoft is one of the premier tenants at Garden State Plaza and one of the highest grossing and most productive tenants in the entire shopping mall.

### C.     New Jersey's Administrative Orders Affecting Garden State Plaza

21.     As a result of the global pandemic known as COVID-19, the Office of Emergency Management of the New Jersey Department of Law and Public Safety issued an Administrative Order on March 17, 2020, which required, *inter alia*, that all indoor portions of retail shopping malls in the state be closed to the public (the "Closure Order"). (A true and correct copy of the Closure Order is attached hereto as Exhibit B.)  Accordingly, Westfield Garden State closed its mall and all retail stores were shuttered for three months, having a significant impact on Westfield Garden State.

22.     On June 18, 2020, the Office of Emergency Management of the New Jersey Department of Law and Public Safety issued an Administrative Order allowing all shopping malls in the State of New Jersey to re-open on June 29, 2020, subject to certain restrictions (the "Re-Opening Order").  (A true and correct copy of the Re-Opening Order is attached hereto as Exhibit C.)

23.     On June 18, 2020, Westfield Garden State notified its retail and brand partners that Garden State Plaza was re-opening on June 29, 2020.  (A true and correct copy of Westfield's June 18, 2020 notice to Garden State Plaza tenants is attached hereto as Exhibit D.)

24.     In advance of re-opening, Westfield Garden State put in place a stringent set of rules and regulations for its own employees, its third-party vendors and for all tenants in the mall to ensure a safe and healthy reopening consistent with the mandates of the Re-Opening Order and the guidelines issued by the State of New Jersey and the Centers for Disease Control.

**D.     Microsoft's Unilateral Decision To Close Its Premises**

25.     On June 26, 2020, Microsoft issued a general statement to the press that it did not intend to reopen its stores, but rather would serve its customers from Microsoft corporate facilities and remotely provide sales, training, and support.  Microsoft announced it would continue to invest in its digital storefronts on Microsoft.com, and stores in Xbox and Windows.  Microsoft's public announcement stated that its retail employees would continue to "serve consumers, small-business, education, and enterprise customers, while building a pipeline of talent with transferable skills."  The Microsoft press release of its intention not to reopen its stores, did not refer to, nor was it based on, any COVID-19 related issues.  (*See Microsoft Store Announces New Approach to Retail* (June 26, 2020).  Retrieved from  https://news.microsoft.com/2020/06/26/microsoft-store-announces-new-approach-to-retail/, a true and correct copy of which is attached hereto as Exhibit E.)

26.     Additional press releases issued in June 2020 confirmed that Microsoft is keeping four of its "Experience Center" stores open, including its New York City Fifth Avenue flagship store, the London Oxford Circus store, its Sydney, Australia store and the Redmond, Washington campus location.  Microsoft has characterized its experience stores, including the flagship store in New York and its London store, as "retail" spaces that allow shoppers to see its latest hardware

and software in action.  (*See*, *e.g.*, *Microsoft's New London Store is Big, Bold and British* by T. Warren (July 10, 2019), The Verge. Retrieved from https://www.theverge.com/2019/7/10/20687952/microsoft-store-london-oxford-circus-uk-preview-review, a true and correct copy of which is attached hereto as Exhibit F; *see also Flagship Store in London* (2019) Moment Factory (images of store clerks assisting customers with Microsoft products). Retrieved from https://momentfactory.com/work/all/all/microsoft-flagship-store-in-london, a true and correct copy of which is attached hereto as Exhibit G; *see also Why Microsoft is Closing Most of its Experiential Stores* by G. Barkho (July 7, 2020), Modern Retail ("Microsoft isn't giving up on physical retail all together."). Retrieved from https://www.modernretail.co/retailers/why-microsoft-is-closing-most-of-its-experiential-stores/, a true and correct copy of which is attached hereto as Exhibit H.)

27.     Microsoft also announced in June 2020 that it will keep open its retail stores in China and continue normal operations in the Chinese market.  (*See Microsoft to Keep its Retail Stores in China* by L. Zhao (June 29, 2020), Pandaily. Retrieved from https://pandaily.com/microsoft-to-keep-its-retail-stores-in-china/, a true and correct copy of which is attached hereto as Exhibit I.)

28.     At the time it issued its public announcement of its intention to close certain of its retail stores, Microsoft had not provided notice to Plaintiff, or to any other Westfield shopping mall where Microsoft leases space, of any intention to shutter its retail stores.

**E.      Terms of the Lease**

29.     The Lease requires Microsoft to pay minimum annual rent which increases each year, a portion of the real estate property taxes assessed against Garden State Plaza, and a portion of the expenses incurred by Plaintiff to maintain the common areas. (*See* Ex. A, §§ 2.01, 2.04 and 8.04.)

30.     Section 1.05 of the Lease entitled "Closing and Termination" allows Microsoft

the right to terminate the Lease, but only under certain specific conditions:

> **[I]n the event all of the retail stores then being operated under the Microsoft trade name have been or will be permanently closed for business, Tenant shall have the right to terminate this Lease and cease operating the Premises upon providing the Landlord with three hundred sixty (360) days prior written notice . . . provided that the closures of such other stores occurs no later than six (6) months following the closure of the Premises.  In the event Tenant exercises its right to terminate this Lease as provided in this Section 1.05 (i) the effective date of such termination shall be the 365th day (the "[Early] Termination Date") following Landlord's receipt of the [Early] Termination Notice; (ii) Tenant shall remain open in the Premises and obligated to perform all of its obligations under this Lease including the payment Minimum Annual Rental, Additional Rent, and all other amounts due under this Lease** through the [Early] Termination Date and (ii) [sic] as a termination fee for such termination, Tenant shall on or before the [Early] Termination Date pay a sum to Landlord equal to twelve (12) months of Minimum Annual Rental and Additional Rent that, but for the termination of this Lease, would have been due and payable to Landlord for the twelve (12) month period following the [Early] Termination Date.

*(Id*. at § 1.05) (emphasis added).

31.     Section 7.02(a) of the Lease entitled "Operations of Business" contains a

continuous operations clause, which provides in pertinent part:

> **Tenant agrees to be open for business and to operate in all of the Premises during the entire Term following the Rental Commencement Date, and to actively and diligently conduct its business at all times in a first class and reputable manner, maintaining at all times a full staff of employees and a complete stock of current season merchandise**.  Tenant shall install and maintain at all times a display of merchandise in the display windows, if any, of the Premises and shall keep the same well lighted. Tenant shall be obligated to be open for business and to operate continuously during all hours established by Landlord as Shopping Center business hours, provided a majority of the Department Stores and at least eighty percent (80%) of the other retail tenants in the Shopping Center are open or obligated to be open for business during such hours.

(*Id.* at § 7.02(a) (emphasis added).)

32.     Section 7.02's operating covenant further provides that any **"[f]ailure by Tenant**

**to be open for business and to operate shall entitle Landlord, in addition to other remedies**

**provided in this Section 7.02, this Lease or by law, to mandatory injunctive relief."**  (*Id*.)

(emphasis added).

33.     Section 27.18 of the Lease, entitled Specific Performance Of Landlord's Rights, provides that "Landlord shall have the right to obtain specific performance of any and all covenants or obligations of Tenant under this Lease, and nothing contained in this Lease shall be construed as or shall have the effect of abridging such right."

34.     Microsoft also negotiated for, and obtained, an "Exclusive" provision in the Lease preventing Westfield Garden State from leasing any premises within the "Exclusive Zone" of Garden State Plaza that sells products that compete with those products sold by Microsoft.  (*Id.* at § 7.05.) The Exclusive Zone includes no less than eight retail stores.  (*Id.* at A-4.)

35.     The Lease further requires Microsoft to keep and maintain its Premises in "first-class appearance, in a condition equal to or better than that which existed when Tenant initially opened the Premises for business, reasonable war and tear excepted, and in good condition and repair. . . and every part thereof and any and all appurtenances thereto wherever located. . . ."  (*Id.* at § 10.02.)

**F.     Microsoft's Illegal Actions and Breach of the Lease**

36.     In a letter to Microsoft dated June 30, 2020, Westfield expressly sought clarification regarding Microsoft's June 26, 2020 public announcement that it will permanently close all its retail stores and requested written confirmation of Microsoft's intent to comply with the provisions of the Lease, to include, *inter alia*, Microsoft's obligation to provide termination notice one year in advance of ceasing to operate the Premises.  (A true and correct copy of Westfield's June 30, 2020 letter seeking clarification from Microsoft, through counsel, is attached hereto as Exhibit J.)

37.     By letter to Westfield dated July 8, 2020, Microsoft, through its counsel, advised of its closure of retail stores in the Westfield shopping centers, but it did not address its obligations to "remain open" and operate under the Leases, despite Westfield's direct inquiry for such

information in its June 30, 2020 letter.  With this July 8th letter, Microsoft's counsel enclosed six "Termination Notices," each dated July 3, 2020, purporting to terminate each of its leases with the respective Westfield shopping center with a stated effective date for all terminations of July 31, 2021.  (A true and correct copy of Microsoft's July 8, 2020 letter attached to the July 3, 2020 termination notice purporting to terminate its Lease with Westfield Garden State (the "Termination Notice") are collectively attached hereto as Exhibit K.)

38.     Microsoft's right to terminate requires that "all of the retail stores then being operated under the Microsoft trade name have been or will be permanently closed for business" and "that the closures of such other stores occurs no later than six (6) months following the closure of the Premises." (*See* Ex. A, § 1.05.)

39.     Microsoft has affirmatively stated that it does not intend to close its "Experience Center" retail stores, nor its New York City's Fifth Avenue flagship store, London Oxford Circus store, Sydney, Australia store, its Redmond, Washington campus location, or any of its retail stores in China.  (*See* ¶¶26-28, *supra.*)

40.     In addition to paying Plaintiff one year's worth of rent following the Termination Notice, plus an additional 12 months of Minimum Annual Rental and Additional Rent as a termination fee on the date of termination, the Early Termination Provision affirmatively mandates that Microsoft provide Early Termination Notice one year before the termination is effective.  (*See* Ex. A, § 1.05.)

41.     Microsoft's refusal to maintain its operations in Garden State Plaza is a breach of Microsoft's mandatory obligations under Section 1.05 of the Lease.

42.     Garden State Plaza is open and a majority of the department stores and at least eighty percent (80%) of the other retail tenants are open or obligated to be open for business.

43.     Microsoft's refusal to reopen its store in Garden State Plaza constitutes a breach of

the continuous operations provision contained in Section 7.02(a) of the Lease.

44.     Westfield Garden State expects and has relied on Microsoft's fulfilment of its duties under the Lease, including ensuring that its store remains open and performing all other obligations under the Lease through the Early Termination Date.

45.     Microsoft's intention to close certain of its retail stores in violation of the continuous operation clause and of the requirement in the termination clause that it remain open and operating for a year following notice, is a breach of the Lease, and it has caused, and will continue to cause, Plaintiff to suffer irreparable harm and/or harm that cannot be remedied by money damages.

**G.     Microsoft's Conduct Causes Harm to Plaintiff Not Compensable by Money Damages**

46.     With the threat of Microsoft closing its stores, and other mall retailers still recovering from the impact of New Jersey's Closure Order, Westfield Garden State has been negotiating with tenants as to past and future rental obligations and co-tenancy requirements.

47.     The Microsoft store in Garden State Plaza appears untouched from the time the Closure Order took effect: the lights are on, all signage remains in place, Microsoft products are visible in the store windows and the store appears fully stocked with merchandise.  From recent photos of the Microsoft store, it appears that Microsoft has received inventory that is packed in boxes.  (*See* true and correct copies of photographs of Microsoft Premises that reflect the current state of the Premises attached hereto as Exhibit L.)

48.     However, if Microsoft were to vacate, the snowball effect would be devastating to Westfield Garden State. The early departure of Microsoft from Garden State Plaza would create a cascading effect of harm to Plaintiff that could not be redressed by money damages. The impending closure would affect all surrounding retailers, as well as future tenants throughout the entire mall.

12

49.     The vacancy of Microsoft, a prestigious tenant in a prominent location, amidst an unprecedented number of smaller independent store closures due to COVID-19 and bankruptcy filings by larger, more familiar stores filing, would be a perfect storm.  If Microsoft's centrally-located spaces suddenly become vacant, the Microsoft space will take longer to lease and will command lower rental rates which will negatively affect rent and occupancy throughout the entire center.  That impact in turn will degrade the curated tenant mix which will lead to a diminished revenue stream for Garden State Plaza and for its tenants, and, ultimately, will impede the aesthetic, appeal and, likelihood of success, of the entire mall.

50.     Tenants seeking to renegotiate their leases in the post-COVID world, who may be under financial strain, are even more concerned with good traffic flow and desirable tenant mix. Microsoft was a primary draw to Garden State Plaza and, with the closure of the Microsoft store, there would be less foot traffic in the four corridors where the Microsoft store is situated, further rendering the Microsoft and surrounding tenant spaces much less attractive to tenants.

51.     When a marquee tenant in a mall closes, it results in a dark stain on the industry in general, and on the property in particular.  Any vacancy in a shopping mall is damaging to the mall's intangible reputation with customers, current tenants and prospective tenants, but more so when the vacancy results from a marquee tenant and household brand such as Microsoft deciding to vacate early without any ability by Westfield Garden State to prepare for that closure, despite the Lease specifically requiring appropriate timing for such preparation.  The effort required to rehabilitate lost reputation is incalculable, and Garden State Plaza's success should Microsoft close at this time, given the already strained tenant relationships resulting from the pandemic, is now uncertain.

52.     Closure of the Microsoft store in Westfield Garden State would also significantly impact many of the co-tenancy provisions in leases throughout the mall, which allow for

substantial reductions in rent if a minimum percentage (which varies but is as much as 80 percent in some leases) of the leasable floor area is not open and operating.  (*See*, *e.g.* Exhibit A, Lease, Section 7.02(d)).  While the precise financial impact of those reductions is fluid, the number of tenants that will opt to discontinue operations entirely as a result of Microsoft's closure and the impact of the resulting domino effect of closures is incalculable.

53.     Should Microsoft be permitted to violate the Early Termination Provision and its continuous operations covenant by failing to remain open and operating for a year following notice of termination, Plaintiff's attempts to enforce lease covenants with other tenants would be significantly impaired, if not rendered futile, producing even more devastating harm to Plaintiff.

54.     Because of the continuous operating clauses which Westfield includes in nearly all of its leases, retail tenants expect that a significant number of these other retailers will be open and operating throughout the term of their leases.

55.     It can take up to twelve (12) months to fill unexpected vacancies, and it is difficult to fill a space with the right tenant to fit the mix for any particular mall or location within that mall. This process is significantly more difficult if the space is vacant rather than when a tenant remains open and operating in the space, and is further complicated by the impact on the retail industry as a result of the pandemic.

56.     The reputational harm that Garden State Plaza will suffer in the leasing community is incalculable. When a prime tenant vacates a mall, it creates a negative buzz throughout the mall. Microsoft's precipitous vacancy will most certainly cause certain of Garden State Plaza's tenants to reconsider lease renewals and consider relocation to Westfield's competitor malls, The Shops at Riverside and Paramus Park Mall.  In turn, the relocation of tenants to a competing mall causes the remaining tenants to question whether the reputation of the mall in which they are located is losing its cachet and appeal to other tenants and customers.  The cumulative effect of the COVID-

19 pandemic coupled with the sudden Microsoft vacancy will directly impact Garden State Plaza's longevity.

57.     Microsoft remaining open and operating in the Premises for one year as required by the continuous operation and termination clauses is critical to Plaintiff's ability to locate a replacement tenant, negotiate and lease the Microsoft space, and lease those other spaces in the mall likely to become vacant as a result of the effects of the pandemic coupled with the Microsoft closure, to suitable tenants, without suffering the incalculable loss of reputation described *supra*.

58.     Should Microsoft's violation of the continuous operating clause as well as the termination clause not be enjoined, such violation would render futile Plaintiff's future attempts to enforce the specific performance of its continuous operations covenants with other tenants, producing even more devastating harm to the mall-plaintiff.

59.     The cumulative effect of the COVID-19 pandemic coupled with the sudden Microsoft vacancy will directly impact Garden State Plaza's longevity and would cause Plaintiff to suffer immediate and irreparable harm that cannot be remedied by money damages.

**COUNT ONE**
**(Breach of Contract)**

60.     Plaintiff repeats each and every allegation aforementioned as if set forth at length herein.

61.     Westfield Garden State and Microsoft entered into a binding contract, the relevant terms of which are set forth in the Lease.

62.     The Lease contains an operating covenant which requires Microsoft to be open for business and to operate its Premises at Garden State Plaza during the entire term of the Lease when Garden State Plaza is open for business, and to "actively and diligently conduct its business at all times in a first class and reputable manner, maintaining at all times a full staff of employees and a

15

complete stock of current season merchandise." (Ex. A, § 7.02(a).)

63.     The operating covenant also requires Microsoft to maintain "at all times" a display of merchandise in the display windows and to keep same "well lighted." (*Id.*)

64.     Microsoft is obligated by the Lease to be open for business and to operate continuously during Westfield Garden State's business hours, as long as a majority of the department stores are open and at least 80% of the other retail tenants are open or obligated to be open for business during such hours.  (*Id.*)

65.     The majority of the department stores and at least 80% of the other retail tenants at Westfield Garden State are either open, or obligated pursuant to their leases, to be open for business during the mall's business hours.

66.     Microsoft has breached the operating covenant of the Lease by failing and refusing to be open for business since the State of New Jersey issued the Re-Opening Order allowing for the reopening of shopping malls for business with the easing of COVID-19 restrictions and since Garden State Plaza was reopened.

67.     Microsoft has also breached the Closing and Termination clause of the Lease by purportedly and illegally terminating the Lease without remaining open and operating its business for one year following the provision of its Early Termination Notice, as required by the Early Termination Provision of the Lease.

68.     Plaintiff is in compliance with all of its obligations under the Lease.

69.     Microsoft's premature closing will negatively affect the Garden State Plaza's (i) vacancy rate; (ii) consumer foot traffic; (iii) profitability; (iv) renewals of leases by other tenants, including those tenants who are attempting to renegotiate the terms of their leases; (v) the curated inter-dependent tenant mix; (vi) customer draw and foot traffic; (vii) ability to lease the closing tenant's space; (viii) overall tenant sales; and (ix) reputation, with each of these harms

compounding and exacerbating one another.

70.     As a direct and proximate result of Microsoft's breaches of the Lease, Plaintiff is suffering ongoing, irreparable harm as described herein.

71.     Given the clear and unambiguous language of the Lease, specific performance of the Lease would pose no undue, disproportionate or inequitable burden upon Microsoft, particularly given (i) its stated intention to continue paying rent, (ii) that its store at Garden State Plaza is fully stocked with merchandise necessary to conduct retail operations, and (iii) Microsoft's announcement that it will retain its retail staff.

72.     Money damages are an inadequate remedy in light of the unique nature of the real property and the retail services at issue, and the cascading reputational and operational harms that would result from a premature termination of the Lease.

73.     Plaintiff seeks a decree against Microsoft in the form of specific performance of the Lease by the entry of a preliminary and permanent injunction enforcing the Lease according to its terms and requiring Microsoft to remain open and operating for the term of the Lease.

**WHEREFORE**, Plaintiff Westland Garden State Plaza Limited Partnership demands judgment against Microsoft Corporation, as follows:

A.  Judgment in favor of Plaintiff and against Defendant, on Count One of this Verified Complaint.

B.  An Order of Specific Performance of the Lease, including preliminary and permanent injunctive relief enjoining Defendant Microsoft Corporation, including its agents, servants, and employees, and all other persons acting in concert with it, from:

(i)  Violating Section 7.02(a) of the Lease;

(ii) Violating Section 1.05 of the lease;

(iii) Removing and/or dismantling the merchandise, inventory, signage,

fixtures and/or lighting in the Premises;

(iv) Closing and vacating the Premises;

(v) Failing to operate the Premises in the same manner in which it has been generally operated since inception of the Lease until the Closure Order;

(vi) Advertising, marketing, or publicly stating that its store at Garden State Plaza is closing;

(vii) Ceasing retail sales operations at Garden State Plaza; and

(viii) Taking any action to disturb the status quo ante.

C. An Order for preliminary and permanent injunctive relief enjoining Microsoft Corporation, its agents, servants, and employees, and all other persons acting in concert with it, from breaching the Lease by:

(i) Violating Section 7.02(a) of the Lease;

(ii) Violating Section 1.05 of the lease;

(iii) Removing and/or dismantling the merchandise, inventory, signage, fixtures and/or lighting in the Premises;

(iv) Closing and vacating the Premises;

(v) Failing to operate the Premises in the same manner in which it has been generally operated since inception of the Lease until the Closure Order;

(vi) Advertising, marketing, or publicly stating that its store at Garden State Plaza is closing;

(vii) Ceasing retail sales operations at Garden State Plaza; and

(viii) Taking any action to disturb the status quo ante.

D. An Order granting Plaintiff its reasonable attorneys' fees, costs and disbursements;

E. An order in the alternative, for an award of damages; and

F. An Order granting Plaintiff such other and further relief as deemed just and proper.

18

Respectfully submitted,

Dated: July 31, 2020          /s/ *Stephen M. Orlofsky*

**BLANK ROME LLP**
*A Pennsylvania LLP*
STEPHEN M. ORLOFSKY
ADRIENNE C. ROGOVE
New Jersey Resident Partners
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Telephone: (609) 750-2646
Facsimile: (609) 897-7286
Orlofsky@BlankRome.com
Rogove@BlankRome.com

**BLANK ROME LLP**
*A Pennsylvania LLP*
Mara B. Levin (*pro hac vice* forthcoming)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 885-5000
Facsimile: (212) 885-5001
mlevin@blankrome.com

*Counsel for Plaintiff Westland Garden State Plaza*
*Limited Partnership*

**VERIFICATION**

I, Colin Shaughnessy, Executive Vice President and Director of Leasing for the United States for Unibail-Rodamco-Westfield, do hereby verify and affirm that the facts set forth in the foregoing Verified Complaint are true and correct to the best of my knowledge, information, and belief. I am authorized to make and am making this Verification on behalf of Garden State Plaza Owner, LLC.

This Verification is made subject to 28 U.S.C. § 1746 for unsworn falsification to authorities.

_____
COLIN SHAUGHNESSY

## <u>CERTIFICATION PURSUANT TO LOCAL CIV. R. 11.2</u>

I, Adrienne C. Rogove, hereby certify pursuant to Local Civil Rule 11.2 that the matter in controversy is not the subject of any other action pending an any court, or of any pending arbitration or administrative proceeding.


Dated: July 31, 2020                             *s/ Adrienne C. Rogove*
                                                 ADRIENNE C. ROGOVE